IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of:<br><br>A.R. | No. 87531-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUNG, J. — A designated crisis responder (DCR) from Aristo Healthcare (Aristo) filed a petition to commit A.R. to 180 days of less restrictive treatment in King County under the "Involuntary Treatment Act" (ITA), ch. 71.05 RCW. In this appeal, the Attorney General's Office (AGO) challenges an order assigning it as counsel to the DCR. We conclude the court erred by denying the AGO's request to withdraw from representing the DCR because under the relevant statute, RCW 71.05.130, Aristo is not a state hospital or facility. Therefore, the county prosecutor was responsible for representing the DCR.

BACKGROUND

A.R. was admitted to Western State Hospital (Western) on August 4, 2023, for a 45-day felony competency restoration. He was transferred to Olympic Heritage Behavioral Health (Olympic) from December 27, 2023, to January 22, 2024, and returned to Western on January 22, 2024, after his previous court order expired. On February 2, 2024, he agreed to a 180-day commitment "with the understanding that Petitioners do consider him ready for a less restrictive alternative placement." A.R. was then transferred back from Western to Olympic on February 7, 2024.

On June 26, 2024, Olympic filed a petition for a 180-day involuntary treatment order. On the same day, two Assistant Attorneys General from the AGO filed a notice of appearance as counsel for the Washington State Department of Social Health and Services (DSHS). On July 10, 2024, the parties agreed to a 180-day less restrictive alternative order (LRO), which the court approved. The LRO placed A.R. at Aristo in King County and was set to expire January 6, 2025.

On December 9, 2024, a DCR from Aristo petitioned for "180 Days Less Restrictive Treatment," due to A.R. continuing to be "gravely disabled." Two Aristo staff members provided affidavits as to why continued treatment was necessary. A hearing to set the trial date was scheduled for December 10, 2024, but it was subsequently continued as there was a dispute over whether the AGO or the King County prosecutor's ITA unit should appear on behalf of the petitioners. The AGO then filed a notice of withdrawal on December 11, 2024.

On December 12, 2024, the trial court ordered the AGO to remain the attorney of record, reasoning that "RCW 71.05.130 requires the [AGO] to represent and provide legal services and advice to state hospitals or institutions with regard to all provisions of and proceedings under this chapter." In response, the AGO filed an emergency motion with the Court of Appeals to transfer the responsibility for litigating the petition to the King County Prosecuting Attorney's Office (KCPAO). On December 31, 2024, a commissioner of this court denied the motion. The AGO then filed a motion for discretionary review. However, because the AGO and A.R. had already agreed to another 180-day LRO on January 15, 2025, the reviewing commissioner deemed the order appealable under RAP 2.2(a)(1) or (3). This appeal followed.

2

DISCUSSION

The merits of A.R.'s LRO are not at issue on appeal. Instead, this case presents a question of statutory interpretation of RCW 71.05.130, which controls whether the county prosecuting attorney or attorney general represents the petitioner in ITA petitions. Specifically, the issue here is whether the AGO should remain the attorney of record in ITA proceedings when it represented the first petitioner in a specific county or if the county prosecutor must take over when a subsequent petition is submitted by a DCR. Although the AGO and the KCPAO were not technically the parties below, we refer to them herein as the "parties on appeal."

I. Mootness

The AGO acknowledges that because "the proceeding on the . . . DCR's petition at issue here has concluded with an agreed commitment order, this case is technically moot." Nevertheless, it requests that this court review the issue because it concerns "issues of continuing and substantial public interest." In re Det. of M.W. v. Dep't of Soc. & Health Servs., 185 Wn.2d 633, 648, 374 P.3d 1123 (2016). KCPAO agrees and "respectfully requests that the court instead decide this case" on the merits.

Ordinarily, "[a] case is moot when 'the court can no longer provide effective relief.' " Id. (quoting State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). However, a court has "discretion to review cases that are technically moot if [it] determine[s] they involve issues of continuing and substantial public interest." M.W., 185 Wn.2d at 648. Courts consider three factors when determining whether a case fits the continuing and substantial public interest exception: " '[ (1) ] the public or private nature of the question presented, [ (2) ] the desirability of an authoritative determination

for the future guidance of public officers, and [ (3) ] the likelihood of future recurrence of the question.' " Id. at 648 (alterations in original) (internal quotation marks omitted) (quoting Hunley, 175 Wn.2d at 907).

Here, the issue presented satisfies the public interest exception to the mootness doctrine. First, the question presented is public in nature because it involves determining which public attorney—the AGO or KCPAO—is responsible for representing DCRs in ITA cases when multiple petitions are sought regarding the same person in the same county. Second, resolution of the case would provide guidance to public officers, as there are currently no published cases that provide statutory interpretation of RCW 71.05.130 in relation to this outstanding question. Third, the issue is likely to recur because the period of commitment is short and the facility treating A.R., or others similarly situated, may petition for less restrictive treatment, recreating the same conditions that led to this dispute. Therefore, we proceed to the merits of this case as a matter of continuing and substantial public interest.

II.  Interpretation of RCW 71.05.130

The AGO contends that based on a straightforward application of RCW 71.05.130, the KCPAO was responsible for representing the DCR following the December 2024 petition because it was filed by a King County DCR and not filed by a state hospital, institution, or state institutional employee. This is so, it argues, because "[u]nder state law, the prosecuting attorney is presumptively responsible for representing petitioners in all ITA proceedings" but for one exception, which is that the AGO "provides legal services and advice to state hospitals and institutions." KCPAO counters that because a state hospital—Olympic—"filed a 180-day petition under a King

4

County cause number" and this LRO placed A.R. at Aristo, the AGO has lawful authority to litigate the petition. Both the AGO and the KCPAO agree resolution of the dispute requires statutory interpretation of RCW 71.05.130.

We review questions of statutory interpretation de novo and "interpret statutes so as to give effect to the legislature's intentions." PeaceHealth St. Joseph Medical Ctr. v. Dep't of Revenue, 196 Wn.2d 1, 7, 468 P.3d 1056 (2020). "We derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." Id. at 7-8. "We regularly employ traditional rules of grammar when discerning a statute's plain language." Id. at 8. "When a statute's plain language is unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends, and we will not resort to interpretive tools such as legislative history." Id.

The version of RCW 71.05.130 in effect at the time discusses the duties of the prosecuting attorney and attorney general as follows:

> In any judicial proceeding for involuntary commitment or detention except under RCW 71.05.201, or in any proceeding challenging involuntary commitment or detention, the prosecuting attorney for the county in which the proceeding was initiated shall represent the individuals or agencies petitioning for commitment or detention and shall defend all challenges to such commitment or detention, except that the attorney general shall represent and provide legal services and advice to state hospitals or institutions with regard to all provisions of and proceedings under this chapter other than proceedings initiated by such hospitals and institutions seeking fourteen day detention.

Former RCW 71.05.130 (2015).[1] As an initial matter, the parties on appeal agree this statute applies, as the proceedings are "any judicial proceeding for involuntary

---

[1] In early 2025, the state legislature amended this statute, which became effective in May 2025. LAWS OF 2025, ch. 226, § 4. Though not material to the resolution of this case, the phrase "state hospitals or institutions" was changed to "state hospitals or state facilities." RCW 71.05.130. Additionally, the

commitment or detention" and not within the exception for proceedings under RCW 71.05.201, which authorizes certain petitions for initial detentions from immediate family members, guardians, or federally recognized Indian tribes. RCW 71.05.130; RCW 71.05.201(1).

Next, the statute contemplates that generally, in involuntary commitment proceedings not brought under RCW 71.05.201, the "prosecuting attorney for the county in which the proceeding was initiated shall represent the individuals or agencies petitioning for commitment or detention." RCW 71.05.130. The exception is that the AGO "shall" represent "state hospitals and institutions with regard to all . . . proceedings under this chapter other than proceedings initiated by such hospitals and institutions seeking fourteen day detention." Former RCW 71.05.130 (LAWS OF 2015, ch. 258, § 4). While the record does not contain all the procedural details about what transpired between the August 2023 felony competency restoration order and the February 2024 180-day involuntary treatment order, neither party disputes that A.R. was represented by the AGO in the February 2024 petition for an agreed 180-day LRO resulting in his transfer from Western to Olympic, as well as in the June 2024 petition for an additional 180-day LRO resulting in his transfer to Aristo.

However, the AGO argues that the plain language of RCW 71.05.130 "turns on the person or agency currently 'petitioning for commitment or detention.' " Accordingly, it contends that each petition creates a separate occasion to apply RCW 71.05.130 and

---

legislature amended the definitions section to include both terms. "State hospital" means "a hospital designated under RCW 72.23.020." RCW 71.05.020(55). "State facility" includes "facilities owned or operated by the [DSHS] that are not state hospitals that provide inpatient services to individuals under this chapter." RCW 71.05.020(54)(b).

requires a new assessment of who must represent the "initiating" party, regardless of the attorney of record for the previous petition.

The KCPAO disagrees, contending that the "statute is silent as to situations in which a state hospital—specifically [Olympic] . . . located in King County and represented by the AGO—initiates involuntary commitment proceedings in King County." It argues that Olympic "initiated" the proceedings starting with the February 2024 petition and subsequent order and that the AGO should remain the attorney of record because the statute does "not contemplate the reassignment of representation in cases initiated by a state hospital located in King County under a King County cause number." In other words, the KCPAO contends that the additional petitions are extensions of the existing LRO, so the petition for the LRO was the relevant proceeding.

Regardless of whether the proceedings were "initiated" by the first petition after A.R. was admitted to Western (which is not in the record) or the February 2024 petition seeking an LRO, we must analyze the phrase "the county in which the proceeding was initiated." The term "initiated" is not included in the statute's definitions section, RCW 71.05.020, so we may look to dictionary definitions. In re Det. of J.N., 200 Wn. App. 279, 286, 402 P.3d 380 (2017) ("Where the legislature has not defined a term, we may look to dictionary definitions."). "Initiated" means "to cause or facilitate the beginning of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1706 (2002). Applying this definition, Western, Olympic, the DCR, and Aristo all "caused or facilitated the beginning of" proceedings for LROs in February 2024, June 2024, and December 2024, respectively. Thus, the dictionary definition alone does not resolve which proceeding is "the

proceeding" that is the subject of the phrase "the county in which the proceeding was initiated" that appears in RCW 71.05.020.

Plain language analysis includes consideration of related provisions as well. Generally, the ITA provides two primary routes for commitment. RCW 71.05.153 controls emergency detention of people with behavioral health disorders. "Any facility receiving a person" pursuant to RCW 71.05.153 "shall require the designated crisis responder to prepare a petition for initial detention" that states there is evidence to support the person's detention, among other things. RCW 71.05.160(1). The facility may detain a person for evaluation and treatment for not longer than 120 hours. RCW 71.05.180. Thereafter, a person may be committed for up to 14 additional days of involuntary intensive treatment or 90 days of a less restrictive alternative treatment pursuant to a petition filed by "the professional staff of the facility or the designated crisis responder." RCW 71.05.230(4)(a)(i).

Separately, a criminal defendant may be admitted to an inpatient facility for competency restoration pursuant to RCW 10.77.600-.680, which provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.600. This was the path through which A.R. was committed. A.R. was charged with several felonies based on events that occurred on or around July 4, 2023, and the Clark County Superior Court concluded he lacked the capacity to understand the nature of the proceedings against him and assist in his own defense. RCW 10.77.645 controls competency restoration in the context of felony charges.[2] A.R. was charged with two class C felonies and a non-

---

[2] The statute applicable to A.R. at the time of his proceedings was former RCW 10.77.086 (2024). In 2025, the statute was recodified as RCW 10.77.645. The relevant provision is substantively the same

8

violent class B felony.[3] "For a defendant whose highest charge is a class C felony, or a class B felony that is not classified as violent under RCW 9.94A.030, the maximum time allowed for the initial competency restoration is 45 days if the defendant is referred to inpatient competency restoration." RCW 10.77.645(3). Pursuant to this statute, A.R. was initially admitted to Western "for a 45 Day Felony Competency Restoration" on August 4, 2023.

The court may determine or the parties may agree that "before the initial competency restoration period or at any subsequent stage of the proceedings that the defendant is unlikely to regain competency." RCW 10.77.645(5). If this were to occur, "the court may dismiss the charges without prejudice without ordering the defendant to undergo an initial or further period of competency restoration treatment." Id. Additionally, "the court shall order that the defendant be referred for evaluation for civil commitment in the manner provided in subsection (7) of this section." Id. If the defendant does undergo competency restoration treatment, "[o]n or before expiration of the initial competency restoration period the court shall conduct a hearing to determine whether the defendant is now competent to stand trial." RCW 10.77.645(6). Generally, the court may order an extension of the competency restoration period, unless an exception applies.[4] RCW 10.77.645(6). Otherwise,

---

in both versions. See former RCW 10.77.086 (2024), recodified as RCW 10.77.640 (LAWS OF 2025, ch. 358, § 2).

[3] The two class C felonies A.R. was charged with were assault in the third degree and felony harassment threat to kill. See RCW 9A.36.031 (assault in the third degree); RCW 9A.46.020 (felony harassment threat to kill). The non-violent class B felony charge was for theft of a motor vehicle, RCW 9A.56.065, which is not classified as violent under RCW 9.94A.030.

[4] The court may order an extension unless the defendant is ineligible under RCW 10.77.645(4) or if it has been determined that incompetency is the result of an "intellectual or developmental disability, dementia, or traumatic brain injury which is such that competence is not reasonably likely to be regained during an extension." RCW 10.77.645(6). RCW 10.77.645(4) provides that when a defendant whose highest charge is a class C felony, other than enumerated disqualifying charges, and "is admitted for

9

at the hearing upon the expiration of the second competency restoration period, or at the end of the first competency restoration period if the defendant is ineligible for a second or third competency restoration period under subsection (4) or (6) of this section, if the . . . court finds that the defendant is incompetent to stand trial, the court shall dismiss the charges without prejudice and order the defendant to be committed to the department for placement in a facility operated or contracted by the department for . . . up to 72 hours if the defendant engaged in inpatient competency restoration services starting from admission to the facility . . . for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW.

RCW 10.77.645(7)(a).

Here, as previously noted, the record does not contain details as to what transpired directly after A.R.'s initial admission on August 4, 2023, for a 45-day competency restoration, a period that would have expired on September 18, 2023. The December 2024 petition for a 180-day LRO states that A.R. was admitted to Olympic from "12/27/2[3] to 1/22/24, and was returned to [Western] on 1/22/24 for court services due to the expiration of his previous court order." The record does not contain any court orders between A.R.'s initial admission to Western in August 2023 and the February 2024 order. Regardless, as pertinent here, the ITA authorizes additional involuntary commitments "pursuant to RCW 71.05.320" under certain circumstances, including if

(3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.645(7), and has committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts . . . or
(4) Such person is gravely disabled.[5]

---

inpatient competency restoration . . . and the defendant is found not competent to stand trial following that period of competency restoration, the court shall dismiss the charges pursuant to subsection (7) of this section."

[5] RCW 71.05.020(25) defines "gravely disabled" as

a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.280.[6] RCW 71.05.320 sets out the requirements for when a court shall remand an individual for additional treatment, including less restrictive alternatives:

> If the court . . . finds that grounds set forth in RCW 71.05.280 have been proven, but finds that treatment less restrictive than detention will be in the best interest of the person or others, then the court shall remand him or her to the custody of the [DSHS] . . . . If the grounds set forth in RCW 71.05.280(3) are the basis of commitment, then the period of treatment may be up to but not exceed 180 days from the date of judgment.

RCW 71.05.320(2). Regardless of what precisely transpired after A.R.'s initial admission to Western in August 2023, ultimately, the February 2024 petition for the 180-day LRO was authorized under RCW 71.05.320.

> The statute specifies that when an initial 180-day LRO expires,

> The person shall be released from involuntary treatment at the expiration of the period of commitment imposed under subsection (1) or (2) of this section unless the superintendent or professional person in charge of the facility in which he or she is confined, or in the event of a less restrictive alternative, the designated crisis responder, files a new petition for involuntary treatment on the grounds that the committed person: . . .
> (d) Continues to be gravely disabled.

RCW 71.05.320(4). "A new petition for involuntary treatment filed under subsection (4) of this section shall be filed and heard in the superior court of the county of the facility which is filing the new petition for involuntary treatment." RCW 71.05.320(5). And "[s]uccessive 180-day commitments are permissible on the same grounds and pursuant to the same procedures as the original 180-day commitment." RCW 71.05.320(6)(b).

---

[6] After review of the February 2024 petition, the trial court found by clear, cogent, and convincing evidence that A.R. was or continued to be gravely disabled. Upon review of the July 2024 petition, the court again found that A.R. "continues to be gravely disabled" under RCW 71.05.320. The December 2024 petition similarly asserted A.R. continued to be "gravely disabled," and the subsequent agreed order from January 2025 again concluded that A.R. was "gravely disabled" under RCW 71.05.320.

However, a commitment order expires after its defined period. See, e.g., RCW 71.05.320(8).

In light of the statutory scheme, continued commitment under the ITA requires "a new petition" followed by a new order authorizing confinement; a subsequent order does not operate as an extension of the original petition. Here, the July 2024 order that transferred A.R. from Olympic to Aristo ordered additional confinement under RCW 71.05.320 based on a determination that A.R. was gravely disabled. Moreover, RCW 71.05.320(5) expressly adds a modifying clause after the term "the facility"—"the facility which is filing the new petition." This modifier suggests a distinction from other facilities or entities that may have filed previous petitions, which makes sense, as each subsequent order may result in the individual's transfer to a different facility. This is what occurred with A.R.: the result of the petition was a transfer to a different facility that could provide a less restrictive alternative instead of inpatient hospitalization. Under RCW 71.05.320(8), the 180-day July 2024 order expired after its defined period. Thus, the related provisions that controlled A.R.'s involuntary treatment required Aristo to release A.R. unless a DCR filed a new petition, which it did in December 2024. See RCW 71.05.320(4). The December 2024 petition qualified as a "new" petition and had to be filed in the county of the facility pursuing the confinement. See RCW 71.05.320(5). Accordingly, the related provisions support the interpretation that each successive petition is a "new" petition.

KCPAO argues that even if each petition qualifies as a "new" petition, the King County related order originally sought by Olympic in June 2024 qualified as the "initiating" petition because the proceeding orders were filed under the same cause

number as the original petition, sought to continue the same conditions as the original LRO, and identified the AGO as the attorney of record. Given these facts, KCPAO contends it "would make no legal or practical sense to transfer the case midstream to [itself]—an office with no prior involvement, no continuity of representation, and no statutory notice of the hearing." The AGO counters that a case's cause number and the "identity of the current attorneys of record," who represented the previous petitioner are not relevant, as nothing within RCW 71.05.130 indicates these are influencing factors. Rather, a new petition and the identity of the new petitioner "determines who is responsible for their representation."

Both the AGO and KCPAO also rely on In re Det. of W.S. to support their respective arguments as to the meaning of "initiated." 22 Wn. App. 2d 275, 510 P.3d 1014 (2022). W.S. concerned an appeal from an order committing W.S. to 14 days of involuntary mental health treatment. Id. at 276. Originally, the State charged W.S. with malicious mischief after an incident in his mother's home. Id. Fearful that W.S. "did not appear lucid," his mother requested police intervention. Id. A superior court judge in Stevens County requested that a DCR evaluate W.S. prior to being released from jail. Id. The DCR evaluated W.S. at a hospital emergency room in Colville. Id. The DCR then filed a petition in King County Superior Court to detain W.S. for an initial 120 hours of involuntary treatment. Id. at 277. Upon release from jail supervision, W.S. was transported to Fairfax Hospital in King County. Id. Next, within 120 hours of his initial detention, Fairfax Hospital filed a petition for 14 days of involuntary treatment. Id. Among other things, W.S. argued that the "wrong county" prosecuted him, because "the proceeding was initiated in Stevens County." Id. This court disagreed, reasoning that

the relevant statute that results in a court order "for up to 14 days of involuntary treatment can be initiated only by filing a petition seeking an order authorizing the 14-day detention." Id. at 278. Thus, had the petition not been filed, W.S. would have been released within 120 hours. Id. at 279. "Accordingly, the judicial proceeding at issue was initiated when the mental health professionals at Fairfax Hospital, in King County, filed a petition seeking W.S.'s detention for up to 14 days of involuntary treatment." Id.

KCPAO contends that W.S. is distinguishable because it concerns "a new petition for 14 days of involuntary treatment . . . precisely the type of proceeding in which RCW 71.05.130 expressly prohibits AGO representation." Otherwise, it argues that W.S. confirms that "the appropriate state litigator is determined by the county in which the commitment proceeding is initiated." We reject the KCPAO's reading of W.S. Rather, we agree with the AGO, who analogizes W.S. Similar to the time-limited 120-hour order in W.S., here, the 180-day order would have expired in January 2025, and Aristo would have had to release A.R. if it did not seek another petition. RCW 71.05.320(4). Thus, like the initiating event in W.S., the initiating event for the judicial proceedings here was when the DCR at Aristo filed the 180-day petition in December 2024.

A plain language analysis also can include reviewing how statutory language has been amended over time. Associated Gen. Contractors of Wash. v. State, 2 Wn.3d 846, 857, 868, 544 P.3d 486 (2024) (noting that new statute governing use of collective bargaining agreements, RCW 39.12.015(3), did not revise or modify earlier statute). Here, the amendments to the relevant language in RCW 71.05.130 have been minimal. In its original form, RCW 71.05.130 stated

> DUTY OF PROSECUTING ATTORNEY. In any judicial proceeding for involuntary commitment or detention, or in any proceeding challenging such commitment or detention, the prosecuting attorney for the county in which the proceeding was initiated shall represent the individuals or agencies petitioning for commitment or detention and shall defend all challenges to such commitment or detention.

LAWS OF 1973, ch. 142, § 18. Initially, the statute placed responsibility for all ITA litigation on the county prosecuting attorney. In 1979, the legislature added the exception relating to the AGO:

> PROVIDED, That after January 1, 1980, the attorney general shall represent and provide legal services and advice to state hospitals or institutions with regard to all provisions of and proceedings under this chapter except in proceedings initiated by such hospitals and institutions seeking fourteen day detention.

LAWS OF 1979, ch. 215, § 8. Although the statute was amended in 1989, 1991, and 1998, those changes are not relevant to our analysis. In 2015, the legislature replaced the term "PROVIDED" with "except" but did not make any additional substantive changes. LAWS OF 2015, ch. 258, § 4.

The KCPAO suggested at oral argument that the legislative intent behind this statute supports its interpretation, because the 2015 amendments to RCW 71.05.320 acknowledged that many people released from inpatient involuntary mental health treatment would benefit from an LRO and "[t]he legislature intend[ed] to make it easier to renew orders for less restrictive treatment following a period of inpatient commitment in cases in which a person has been involuntarily committed more than once and is likely to benefit from a renewed order for less restrictive treatment."[7] Accordingly, KCPAO argues that because ease and expediency is prioritized in these renewals, the

---

[7] RCW 71.05.320 note (Findings—Intent—2015 c 250; 2009 c 232).

AGO is in the best position to fulfill this goal, since they are most familiar with the case.[8] This argument is unavailing, as the legislative intent to create a smoother process from inpatient commitment to a less restrictive alternative does not address who is best positioned to represent the party petitioning the court for the requisite orders.[9]

To the extent the legislative history is illuminating, we agree with the AGO that the 1979 and 2015 amendments to RCW 71.05.130 "confirm that the [AGO's] role in ITA litigation is limited," given that the statute initially gave all responsibility to county prosecuting attorneys except in particular circumstances. Moreover, as the AGO points out, "this division of litigation responsibilities is consistent with the [AGO's] constitutional authority." See City of Seattle v. McKenna, 172 Wn.2d 551, 556, 259 P.3d 1087 (2011) (the AGO's legal obligations include being the " 'legal adviser of the state officers,' " and duties created by statute (quoting Wash. Const. art. III, § 21)). Based on the plain language of the statute, the superior court lacked authority to order the AGO to undertake legal action that had been specifically delegated to another government entity.[10]

---

[8] Wash. Ct. of Appeals, oral argument, In re Det. of A.R., No. 87531-1-I (Jan. 9, 2026), 19 min., 40 sec. to 20 min., 45 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026011256/?eventID=2026011256.

[9] We also reject the KCPAO's argument that the AGO is more familiar with A.R.'s needs because it has been continuously involved in A.R.'s care since his admission to Western. While proving a respondent is gravely disabled can involve review of their historical baseline, a new petition always requires current information in order to identify changes over time. See, e.g., RCW 71.05.020(25) (" 'Gravely disabled' means a condition in which a person, as a result of a behavioral health disorder . . . manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control."). A new commitment petition must be based on the patient's *current and recent* condition. See RCW 71.05.320(4)(d) (filing of a new petition for involuntary treatment "on the grounds that the committed person . . . *[c]ontinues to be* gravely disabled") (emphasis added); In re LaBelle, 107 Wn.2d 196, 217, 728 P.2d 138 (1986) (finding opinions supporting petition based on observations and interviews two to three months earlier asserting a respondent is gravely disabled were insufficient).

[10] The KCPAO also argues that "there is no statutory or procedural mechanism for providing notice" to county prosecuting attorneys when a new petition is filed. But RCW 71.05.300(1) provides that for petitions for 90-day treatment, "[t]he designated crisis responder shall immediately notify . . . the prosecuting attorney . . . and provide a copy of the petition to such persons as soon as possible." And

In sum, we hold that RCW 71.05.130 requires county prosecutors to represent persons and agencies "petitioning for commitment or detention." A limited exception applies when the petitioner is a state hospital or institution, in which case the AGO is responsible for representing the petitioner. Given the plain language of the statute, related provisions, and amendments, when a new petition is sought, RCW 71.05.130 requires a reassessment as to which of these two public entities must represent a petitioner. The responsibility does not default to whichever attorney represented the party that filed the first petition in a county.[11]

CONCLUSION

The court erred by denying the AGO's request to withdraw from representing the DCR of Aristo in its petition requesting an LRO for A.R., as Aristo is not a state hospital or facility. We reverse and remand for further proceedings consistent with this opinion.

_____
Chung, J.

WE CONCUR:

_____
Bui, J.

_____
Mann, J.

---

notice protections under RCW 71.05.300 extend to 180-day petitions as well. See In re Det. of Dydasco, 135 Wn.2d 943, 950, 959 P.2d 1111 (1998) (three-day prefiling notice required for 180-day petitions despite statute referring only to 90-day petitions).

[11] The KCPAO argues that the AGO's notice of withdrawal did not comply with CR 71. But the trial court denied the AGO's request to withdraw. Furthermore, KCPAO did not raise this issue in a cross-appeal. For these reasons, we need not address its argument on this issue.